UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GABRIELLE S. OLAYO,                                    Case No. 2:21-cv-00205-EJY

        Plaintiff,
                                                       **ORDER**
   v.

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

     Plaintiff Gabrielle Olayo ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance ("DIB") under Title II of the Social Security Act.  ECF No. 19.  For the reasons stated below, the Commissioner's decision is affirmed.

## I.    BACKGROUND

     On April 6, 2019, Plaintiff filed an application for DIB alleging an onset date of April 8, 2018.  Administrative Record ("AR") 227-233.  The Commissioner denied Plaintiff's claims by initial determination on August 9, 2019 (AR 94-98), and upon reconsideration on August 21, 2019.  AR 101.  On September 3, 2020, Administrative Law Judge ("ALJ") Juan Carlos Hunt held a hearing at which Plaintiff appeared and testified.  AR 37-70.  The ALJ also heard testimony of vocational expert ("VE") Mark Tasso.  *Id.*  The ALJ ultimately found that Plaintiff was not disabled, issuing his determination on September 9, 2020.  AR 20-32.  When the Appeals Counsel denied Plaintiff's request for review on December 18, 2020, AR 1-6, the ALJ's decision became the final order of the Commissioner.  42 U.S.C. § 405(g).  This civil action followed.

## II.    STANDARD OF REVIEW

     The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)).   In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  Finally, the court may not reverse an ALJ's decision when an error is harmless.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.    DISCUSSION

**A.    <u>Plaintiff's Separation of Powers Argument</u>**.

Independent of her challenge to the ALJ's unfavorable decision, Plaintiff argues that she is entitled to remand as a matter of law because the conditions of Commissioner Saul's appointment and tenure violated separation of powers.  ECF No. 19 at 5.  Plaintiff bases her argument on the Supreme Court's decisions in *Seila Law LLC v. CFPB* and *Collins v. Yellin*, which held that the for-cause restriction on the President's executive power to remove the single Director of the Consumer Financial Protection Bureau ("CFPB") and the Federal Housing Finance Agency ("FHFA"), respectively, violated the constitutional separation of powers.  *Seila Law LLC v. CFPB*, 140 S.Ct. 2183 (2020); *Collins v. Yellin*, 141 S.Ct. 1761 (2021).  Plaintiff argues that *Seila Law* and *Collins* demonstrate that the limitation on the President's power to remove the Commissioner of the Social Security Administration ("SSA"), articulated in 42 U.S.C. § 902(a)(3), is unconstitutional. Plaintiff argues that Commissioner Saul, the Commissioner heading the SSA at the time Plaintiff's hearing was held, was not properly in office because he led the SSA as a single-member head protected by

2

a six year tenure exceeding the President's term of office. Plaintiff concludes that, therefore, the ALJ who heard and decided Plaintiff's case was without constitutional authority to do so. ECF No. 19 at 5-9.

In *Seila Law,* the United States Supreme Court considered the constitutionality of a statutory limitation on the President's power to remove the head of the CFPB. Under the facts of the case, the Supreme Court held the limitation was an unconstitutional violation of the separation of powers. *Seila Law*, 140 S.Ct. at 2207. In the course of coming to this conclusion, the *Seila Law* Court took issue with Congress investing unilateral decision-making power in the single Director of the CFPB, insulating the Director with a for-cause removal restriction, and delineating a five-year tenure in office. *Id.* at 2204. The Court explained,

> Because the CFPB is headed by a single Director with a five-year term, some Presidents may not have any opportunity to shape its leadership and thereby influence its activities. … To make matters worse, the agency's single-Director structure means the President will not have the opportunity to appoint any other leaders—such as a chair or fellow members of a Commission or Board—who can serve as a check on the Director's authority and help bring the agency in line with the President's preferred policies.

*Id.* Here, Plaintiff argues that, like the head of the CFPB, Commissioner Saul was serving without constitutional authority.[1] ECF No. 19 at 7. Plaintiff contends that the SSA Commissioner was impermissibly in office and therefore exercised impermissible authority over Plaintiff's application for benefits because it is the Commissioner who appointed the ALJ that denied her claim. *Id.*

In *Collins v. Yellen*, the Supreme Court similarly found the structure of the FHFA unconstitutional for "concentrating power in a unilateral actor insulated from Presidential control." *Collins*, 141 S.Ct. at 1784. The *Collins* decision, which the Ninth Circuit considers "controlling with respect to the remedy for any unconstitutionality in the removal provisions," *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021), emphasized that the unconstitutional leadership structure of the FHFA did not automatically render the agency's decisions void. *Collins*, 141 S.Ct. at 1787. The Court noted that, while the *removal* provision at issue was unconstitutional, the

---

[1] In further support of this argument, Plaintiff references the Office of Legal Counsel's nonbinding determination that "the statutory restriction on removing the Commissioner [of the Social Security Administration] is unconstitutional." ECF No. 19 at 6-7, *quoting Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. ___ (July 8, 2021).

*appointment* of each director to the FHFA was sound, and thus there was "no reason to regard any of the actions taken by the FHFA … as void." *Id.*  Instead, the *Collins* Court implied that a Plaintiff seeking retrospective relief must make a showing of "compensable harm," and remanded the case to resolve whether such harm was present.  *Id.* at 1788-89.

Defendant makes two primary arguments, both rooted in the Court's discussion in *Collins*, that Plaintiff's separation of powers argument does not entitle her to relief.  First, Defendant argues that because ALJ Hunt's appointment was ratified in July 2018 by then-Acting Commissioner of Social Security Berryhill, who was not subject to an impermissible removal restriction, any harm stemming from the U.S.C. § 902(a)(3)'s removal provision is tenuous at best.[2]  ECF No. 22 at 8-9. Second, Defendant argues that regardless of the ratification, Plaintiff cannot show she suffered harm as a result of the unconstitutional removal provision.  *Id.* at 10.

Plaintiff replies that "[b]ecause of the intervening authority of the unconstitutional office of the Commissioner, the ALJ in this case was not subject to sufficient accountability."  ECF No. 24 at 4.  Plaintiff cites a District of Colorado opinion for the proposition that just because "Ms. Berryhill's position was temporary … does not mean she could be removed at will."  *Id.*, *citing Tafoya v. Kijakazi*, 2021 WL 3269640, at *5 (D. Colo. July 29, 2021).  Plaintiff suggests that President Biden's delay in removing Commissioner Saul until after the Office of Legal Counsel issued its opinion leads to the conclusion that Section 902(a)(3) prevented the President from removing the Commissioner where he otherwise would have acted.  *Id.* at 6.  Plaintiff argues that Commissioner Saul was terminated in part for reducing Due Process in the social security disability insurance context, and that "there is a strong possibility that Olayo was among those who were wrongfully deprived of their due process rights."  *Id.* at 7-8.

Plaintiff fails to make a showing of actual harm as anticipated by Supreme Court and Ninth Circuit case law.  *See, e.g.*, *Collins*, 141 S.Ct. at 1787-89; *Decker Coal*, 8 F.4th at 1138 ("there is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.").  Then-Acting Commissioner Berryhill ratified ALJ Hunt's appointment in July 2018, before the ALJ adjudicated

---

[2]  Plaintiff concedes that the appointment of ALJ Hunt was proper.  ECF No. 19 at 5.

4

Plaintiff's claim in 2020. ECF No. 22 at 9. Plaintiff is unable to establish a causal connection between the unconstitutionality of Commissioner Saul's tenure under 42 U.S.C. §902(a)(3) and the adjudication of her claim by a properly appointed administrative law judge. *Decker Coal*, 8 F.4th at 1137 (refusing to vacate the adjudication of an ALJ whose appointment was ratified before the decision at issue "absent a showing of harm."); *see also Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756 RAJ, 2021 WL 5514434, at *7 (W.D. Wash. Nov. 24, 2021) ("Plaintiff has failed to show any connection between the unconstitutional removal clause and the ALJ's decision denying her benefits.").

The argument that President Biden would have removed Commissioner Saul for hypothetical Due Process violations immediately upon taking office but for Section 902(a)(3) is highly speculative and beside the point. Even if Plaintiff could clearly establish that the President was prevented from exercising his removal power by Section 902(a)(3), which she cannot, Plaintiff presents no evidence that her rights were violated by any specific action taken by the Commissioner or the ALJ at any point in the process. Plaintiff argues that Defendant is exaggerating the harm threshold required for retrospective relief. But this argument is meritless because Plaintiff cannot show anything more than the remote and abstract possibility of harm. As was the case in *Decker Coal*, there is no evidence that "the existence of [the removal restriction] alone tainted the ALJ's decision." *Id.* For the reasons stated above, the Court declines to reverse or remand the prior rulings in this case and award Plaintiff retroactive relief.[3]

Having determined that Plaintiff's separation of powers argument does not entitle her to reversal or remand, the Court proceeds to consider Plaintiff's substantive challenges to the ALJ's denial of disability benefits.

---

[3]    The Court discusses the constitutional issue in terms of *Collins'* principle of "compensable harm," but notes that Plaintiff also cannot establish traceability and redressability sufficient to give her standing to bring her separation of powers claim. Because neither party addressed standing in their briefs, the Court confines its discussion to the arguments presented.

**B.    Establishing Disability Under the Act**.

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> (a)    the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> (b)  the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A).  "If a claimant meets both requirements, he or she is disabled."  *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520.  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

> Step 1.  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  *See* 20 C.F.R. § 404.1520(b).

> Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  *See* 20 C.F.R. § 404.1520(c).

> Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *See* 20 C.F.R. § 404.1520(d).

> Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the

claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.  *See* 20 C.F.R. § 404.1520(e).

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits.  *See* 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.  *See id*.

*Id*. at 1098-99 (internal alterations omitted).

**C.    Summary of ALJ Findings**.

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2023, and found that Plaintiff did not engage in substantial gainful activity from the alleged onset date of April 8, 2018.  AR 22.  At step two, the ALJ found that since the alleged onset date, Plaintiff has suffered from the severe impairments of spine disorder, anxiety and obsessive-compulsive disorder (OCD), and trauma-and-stressor-related disorder(s).  *Id.*  The ALJ also found that Plaintiff suffered from a number of medically determinable non-severe impairments that only minimally limited Plaintiff's ability to work during the relevant period.  AR 23.  These impairments include hearing loss, respiratory disorders, and gastrointestinal disorders.  *Id.*  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments meeting or equaling any "listed" impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 24.

In preparation for step four, the ALJ calculated the following Residual Functional Capacity ("RFC")[4] through the date last insured to perform:

light work as defined in 20 CFR 404.1567(b): except: she frequently can balance, crouch, kneel, crawl, stoop, and climb ramps and stairs and occasionally ladders and scaffolds; she frequently can push, pull, and operate foot controls with the lower extremities; she needs to avoid concentrated exposure to crowds, fumes, dusts, odors, gases, poor ventilation, and other pulmonary irritants; she needs to avoid concentrated exposure to high ambient (loud) noise environments or environments where good hearing is essential to job performance or safety, such as unprotected heights or machines with moving mechanical parts; she can

---

[4]    "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

understand, remember, and carry out simple instructions; she frequently can interact with supervisors but only occasionally with coworkers and the public; she will be off-task for 5% of the workday due to, for example, the need to alternate positions or use the bathroom and/or attention/concentration lapses; and, she can tolerate few changes in a routine work setting.

AR 25. At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. AR 30. At step five, the ALJ heard from the VE, who testified that an individual of Plaintiff's age, education, work experience, and RFC could work as a laundry sorter, delivery router or garment sorter. AR 32. Based on the VE's testimony and the ALJ's independent review of the Dictionary of Occupational Titles, the ALJ concluded that "claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* As a result, the ALJ concluded that Plaintiff was not disabled from the alleged onset date to the date of the decision. *Id.*

**D.**   **Whether the Mental RFC Calculation was Supported by Substantial Evidence**.

The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That being said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact as embodied in the RFC are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Uklov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch*, 400 F.3d at 679. Consequently, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

1       **1.**        **The ALJ's assessment of Plaintiff's mental impairments**.

2         *a.*        *Severity of mental impairments at steps 2 and 3.*[5]

3        The ALJ found that Plaintiff had "no more than moderate limitation" in the areas of (1)

4   understanding, remembering, or applying information, (2) interacting with others, (3) concentrating,

5   persisting, or maintaining pace, and (4) adapting or managing oneself.  AR 24.  The ALJ based this

6   finding in part on evidence of Plaintiff's daily living activities

7           including her demonstrated ability to live independently, as well as her performance
8           of household chores such as cleaning and doing the laundry (regardless of how long
        such activities might take), and her ability to drive (even if an outside human
9           navigator is necessary).

10  AR 24.  These activities suggested no more than moderate limitation in areas (1) and (3).  The ALJ

11  also noted that Plaintiff's "ability to leave her home, as well as interact with her medical providers,

12  indicates she has no more than moderate limitation in area #2."  *Id.*

13       The ALJ next evaluated Plaintiff's mental status examinations contained in the record noting

14  that "such examinations were positive only for abnormalities of mood and/or affect" and otherwise

15  normal.  *Id.*  According to the ALJ, these examinations "argue[] strongly against greater than

16  moderate levels of limitation" in all four areas.  *Id.*  The ALJ noted that abnormality of mood and

17  affect may moderately impact Plaintiff's ability to interact with others, but on the whole she came

18  across as "pleasant, polite, and cooperative" in her examinations, suggesting "significant enough

19  adaptive function" such that a finding of moderate (or less than moderate) limitation in area (4) was

20  appropriate.  *Id* at 24-25.

21       The ALJ found further support for no more than moderate limitation in area (4) in Plaintiff's

22  "ability to live alone; her history of conservative behavioral health treatment; and, trends in her

23  mental status examinations failing to reveal any particular problems of intellectual capacity,

---

24     [5]     The ALJ's decision evaluates Plaintiff's mental impairments in the step two and three analysis and in the RFC
25  calculation following step three.  The ALJ clarifies that his discussion of Plaintiff's mental functioning limitations at
steps two and three are not themselves the RFC calculation, but nonetheless notes that the RFC reflects the degree of
26  limitation found in this discussion.  AR 25.  Further, in the mental impairment RFC itself, the ALJ notes "that the listings
analysis appearing under finding #3 of this decision already provides support for the contention that the mental
27  limitations appearing in the claimant's residual functional capacity assessment constitute the maximal plausible
expression of the claimant's work-related limitations during the period at issue."  AR 28.  Therefore, the Court includes
28  the ALJ's discussion of the severity of mental impairments at steps two and three for a complete picture of the mental
impairment evidence the ALJ considered.

abnormal thought processes/content, or perceptual abnormalities that could conceivably substantially reduce her adaptive function." *Id.* at 25.

The ALJ noted that Plaintiff does not receive psychological or mental health support at home, and that Plaintiff's mental health treatment has been relatively conservative. *Id.* The conservative nature of her treatment led the ALJ to conclude that "[i]t is also not the case that the claimant's behavioral health treatment is so substantial and pervasive in her life as to artificially diminish the symptoms and signs of her various mental disorders." *Id.* Plaintiff has participated in group and individual therapy and has used psychotropic medication, but never required inpatient hospitalization. *Id.* These facts suggested that Plaintiff functions independently and "well enough … to drive [to] and attend various medical appointments." *Id.*

    b.    *The ALJ's mental impairment RFC analysis.*

The ALJ's mental impairment RFC focused on the limitations arising out of Plaintiff's anxiety and obsessive-compulsive disorder ("OCD") and her "trauma and stressor related disorder" (elsewhere referred to as post-traumatic stress disorder). AR 26. The ALJ considered Plaintiff's function report where she alleged that she could not work due to "ongoing mental illness, presenting with continue[d] depression, chronic sleep impairment, poor memory, and neglect of hygiene." *Id.* Plaintiff reported that "her ability to perform nearly all basic physical and mental work activities had been reduced by her impairments." *Id.*

The ALJ next summarized Plaintiff's hearing testimony, which he described as "largely consistent" with Plaintiff's allegations of anxiety/OCD and trauma and stressor related disorder. *Id.* The ALJ noted that Plaintiff testified to being particularly limited by post-traumatic stress disorder ("PTSD") resulting in frequent nightmares, lack of sleep, and "chronic tiredness." *Id.* He noted Plaintiff's testimony in which Plaintiff states that "she was emotionally unstable and alternately would sleep more than twelve hours at a time when depressed. … participation in social activities was difficult. … she often lacked the motivation to perform personal hygiene, such as shower." *Id.* The ALJ stated that he compared this testimony to the entirety of the record in order to determine whether it was consistent with objective medical evidence and "all other evidence relating to the intensity, persistency, and functionally limiting effects of her symptoms." *Id.*

Ultimately, the ALJ found that Plaintiff's anxiety, OCD, and PTSD "could reasonably be expected to cause the alleged symptoms," but that Plaintiff's testimony concerning the "intensity, persistence, and limiting effects of these symptoms" were not entirely consistent with the medical and other evidence in the whole of the record.  AR 27.  On the issue of Plaintiff's allegations of memory issues, the ALJ notes that her medical providers did not perform any standardized intelligence, cognition or achievement tests on Plaintiff, therefore leading to the conclusion that such tests were not medically necessary.  AR 28.

The ALJ noted, in particular, that "even subjective, questionnaire-based measures of psychological dysfunction, such as Patient Health Questionnaires (PHQ)s were often indicative of only minimal disorder." *Id.*  The ALJ references a PHQ from May 2018 in which Plaintiff presented with moderate-to-severe depression, then emphasized that Plaintiff's PHQ taken two months later was "entirely negative" for depression, and found PHQs from April 2019 and May 2020 scored a 2 out of 6 for depression, where a score of 3 and higher is needed to qualify for a major depressive disorder. *Id.*

The ALJ considered a Veterans Administration ("VA") evaluation from January 2018 in which the VA evaluated Plaintiff's "mental function, in connection with her service-connected disability assessment." AR 29.  The ALJ noted that the evaluation corroborated Plaintiff's testimony as to her PTSD symptoms such as flashbacks and nightmares in connection with her service.  *Id.* Other signs of dysfunction included "some socially avoidant behavior and … some signs not typically seen on other examinations such as intermittently hesitant speech and scattered presentation." *Id.*

The ALJ also considered administrative findings from two state psychological consultants who testified at the initial and reconsideration levels of Plaintiff's adjudication that Plaintiff presented "no severe mental medically determinable impairment." *Id.*  The ALJ found these opinions unpersuasive, citing to the VA evaluation and "mental status examinations frequently positive for abnormalities of mood/affect" in support of the existence of a severe mental impairment. *Id.*

Next, the ALJ addressed a March 2020 opinion from Plaintiff's treating source, David Abrams, that "due to PTSD, the claimant had marked limitation of ability to perform all tasks relating to the larger goal of understanding, remembering, and carrying out instructions." *Id.* The opinion continued noting Plaintiff's "extreme limitation of ability to perform all tasks relating to proper social function." *Id.* The ALJ found this opinion "unpersuasive" due to lack of evidentiary support for the assertion that Plaintiff has marked limitation in understanding, remembering, and carrying out instructions. *Id.* According to the ALJ, "[s]uch a limitation is incompatible with the claimant's demonstrated activities of daily living, including her independent living, ability to perform some household chores, and more." *Id.* The ALJ again commented that Plaintiff's mental status examinations, revealing little to no issues of intellect or cognition, do not support Mr. Abrams' opinion. AR 30. The ALJ also found Mr. Abrams' opinion that Plaintiff suffers from an extreme limitation of all social function incompatible with the trends in her mental status examination because there is no indication of suicidal or homicidal behavior, no history of inpatient psychiatric hospitalization, and because Plaintiff "is able to function well enough, both inside and outside her home." *Id.*

The ALJ summarized his RFC findings with respect to Plaintiff's mental impairments:

> Due to her PTSD, specifically, as supported by trends in mental status examinations showing abnormalities of mood and affect, and by the avoidant behaviors and intrusive thoughts confirmed by the Veterans Administration, I find that the claimant frequently can interact with supervisors and occasionally can interact with coworkers and the public. For the same reasons, I find that the claimant must avoid concentrated exposure to crowds. Due largely to the claimant's current allegations and historical complaints of poor memory, I find that the claimant can understand, remember, and carry out only simple instructions. To further reflect the moderate limitation of adaptive function discussed under finding #3, above, I also find that the claimant's mental impairments contribute to her need to be off-task for 5% of the workday and to her inability to tolerate more than a few changes in routine work setting."

AR 30.

## 2.   The parties' arguments.

Plaintiff argues that the ALJ's RFC assessment of her mental impairments is unsupported by substantial evidence. ECF No. 19 at 9. Specifically, Plaintiff argues that the ALJ improperly found the opinion of Mr. Abrams, Clinical Social Worker, to be unpersuasive and that the ALJ failed to

articulate a basis for his finding that Plaintiff would be off task for 5% of the workday.  *Id.* at 10-11.
With respect to Mr. Abrams' opinion that Plaintiff would have marked to extreme limitations in
"various work functions," which the ALJ found inconsistent with the record as a whole, Plaintiff
argues that the opinion was in fact consistent.  *Id.* at 9.  Plaintiff writes,

> Olayo endorsed continuing symptoms of PTSD including anxiety irritability,
> intrusive memories and nightmares of Afghanistan, hypervigilance, exaggerated
> startle response, and isolation. … Olayo stated that prior to her military rape that
> she was fearless and confident, but now is unable to make any significant
> commitments. … Olayo attempted to cope by sticking with a rigid schedule, but
> was further frustrated by this inflexibility.  Olayo also reported that her mind
> "chatters" all of the time about her short comings and bleak future.

*Id.* at 10.  Plaintiff also cites to the VA examination opinion that her "anxiety would interfere
significantly with her ability to maintain consistent work attendance and performance."  *Id.*  Plaintiff
accuses the ALJ of focusing on "isolated statements/findings in the record to support his mental RFC
assessment."  *Id.*

Defendant responds that the ALJ specifically found a lack of supporting evidence for Mr.
Abrams' opinion that Plaintiff had "marked limitations understanding, remembering, and carrying
out information."[6]  ECF No. 22 at 20.  Defendant argues that the ALJ "expressly stated that such
purported degree of limitation was incompatible with [Plaintiff's] mental status examinations"
revealing no cognitive or intellectual issues.  *Id.*  The ALJ also found Plaintiff's daily activities
incompatible with marked limitations in the areas of understanding, remembering, and carrying out
instructions.  *Id.*  Defendant points to the ALJ's explanation that he was not persuaded Plaintiff had
"extreme limitations in social function … because she had no history of inpatient care and she was
able to function well enough, both inside and outside of her home."  *Id.*

Defendant responds to the evidence Plaintiff presents of her PTSD symptoms following
military service by arguing: "Plaintiff focuses largely on her self-reports of symptoms … which do
not transform into objective medical evidence simply by virtue of being reported to a physician."
*Id.*  Defendant points out that Plaintiff fails to address the ALJ's finding that her daily activities
contradict Mr. Abrams' opinion.  *Id.* at 21.  Further, Defendant argues that "[i]nsofar as Plaintiff
points to one record to show that the ALJ improperly evaluated Mr. Abrams's opinion, she is simply

---

[6]     Defendant misquotes the ALJ's opinion, which reads, "carrying out instructions."  AR 29.

presenting a different interpretation of evidence." *Id.* Defendant emphasizes the purpose of a substantial evidence review is to determine "whether there is 'sufficien[t] evidence' *to support* the agency's factual determinations." *Id.* at 21.

Plaintiff also challenges the ALJ's 5% off-task limitation: "The ALJ did not explain how he arrived at the '5% off-task' figure." ECF No. 19 at 10. Plaintiff states (without citing to authority) that this alleged omission constitutes reversible error because, despite "the ALJ's prerogative to translate mental limitations into concrete work restrictions[,] … [t]he burden of articulation rests with the ALJ." *Id.* at 11. Plaintiff characterizes the ALJ's RFC assessment as "nothing more [than] an impermissible lay opinion." *Id.* Plaintiff alleges that the ALJ's RFC assessment lacked "a supporting medical opinion" and instead rendered an unqualified medical opinion of his own. *Id.*

Defendant disputes that the ALJ provided no explanation for his 5% off-task limitation and that the ALJ's opinion constitutes an unqualified interpretation of raw medical data. Defendant points to the ALJ's statement that the 5% limitation was intended to accommodate Plaintiff's gastrointestinal issues. ECF No. 22 at 25. Defendant writes that the ALJ indicated he considered Plaintiff's mental impairments when calculating the off-task limitation. *Id.* And, Defendant notes that "Plaintiff does not actually argue that the 5% number is improper" and "fails to competently argue why this number was in error." *Id.* at 25-26.

Defendant also challenges the legal basis for Plaintiff's contention that the ALJ is "not qualified to interpret raw medical data without a supporting medical opinion." *Id.* at 22. Defendant argues that "there is *no requirement* that the RFC must be supported by a particular medical opinion," because the ALJ has the sole responsibility for calculating the RFC from both the medical and nonmedical evidence in the record. *Id.* at 22. Defendant asserts that the ALJ is "expressly empowered to review this evidence under the regulations and Ninth Circuit authority," and argues that the Ninth Circuit cases Plaintiff cites, *Tackett v. Apfel* and *Day v. Weinberger*, are inapplicable. *Id.* at 23-24. Further, Defendant cites to District of Nevada cases wherein the Court rejected arguments that the ALJ wrote an impermissible lay opinion because the plaintiff failed to "explain how any findings contained in [the evidence that the ALJ interpreted] warranted greater restrictions in the RFC," arguing the Court should reject Plaintiff's argument for the same reason. *Id.*, *quoting*

*Vavoukakis v. Saul*, Case No. 2:20-cv-01469-CLB, 2021 WL 2853644, at *6 (D. Nev. June 8, 2021). Defendant argues that Plaintiff failed to identify any reversible error and instead merely "complains that her subjective complaints and *one* mental status examination supported Mr. Abrams's opinion." *Id.* at 26.

### 3.    There was substantial evidence to support the mental RFC.

*a.    The ALJ did not err in finding Mr. Abrams' opinion unpersuasive.*

For claims such as Plaintiff's filed on or after March 27, 2017, the rules regarding the evaluation of medical evidence were revised. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (January 18, 2017). Under the revised rules, the ALJ is no longer required to defer to or assign each medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ will articulate the persuasiveness of the medical opinions or prior administrative findings based on several factors laid out in the regulations, the most important of which are consistency and supportability. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The regulations no longer require special deference be given to a claimant's treating source. 82 Fed. Reg. at 5853. Therefore, the opinion of Mr. Abrams, Plaintiff's treating physician, is not entitled to special weight in evaluating its persuasiveness.

Plaintiff's challenge the ALJ's finding that Mr. Abrams' opinion was unpersuasive fails. Plaintiff collectively refers to Mr. Abrams' opinions that Plaintiff had "marked to extreme limitations in various work functions" and argues that Olayo's self-reported symptoms of PTSD and one VA exam support these limitations. Plaintiff's argumentation does not engage with any of the specific reasoning the ALJ articulated in finding Mr. Abrams to be an unpersuasive source. The ALJ discussed Mr. Abrams' opinion that Plaintiff would have marked limitations in understanding, remembering, and carrying out instructions. AR 29. With respect to Plaintiff's allegations of memory issues, the ALJ noted that none of Plaintiff's providers saw fit to order "standardized intelligence, cognition, or achievement testing" for Plaintiff, suggesting a lack of noticeable deficiency in these areas. AR 28-29. The ALJ also specifically mentioned that Plaintiff's daily living activities—her ability to live alone and perform household chores, if imperfectly—were

incompatible with Mr. Abrams' opinion of marked limitations in understanding, remembering, and carrying out instructions.  AR 29-30.

Similarly, the ALJ discounted Mr. Abrams' opinion that Plaintiff suffered from extreme limitations in all social function because "the claimant has not demonstrated suicidal/homicidal behavior; has no history of inpatient psychiatric care; and is able to function well enough, both inside and outside of her home."  AR 30.  Plaintiff does not state how these findings are in error, but merely argues that other evidence supports Mr. Abrams' opinions.  ECF No. 19 at 10.  The evidence in question, however, "does not invalidate all of the other objective evidence that the ALJ cited to show that the record was not consistent with Mr. Abrams's opinion."  ECF No. 22 at 21.

Plaintiff describes her varying symptoms of PTSD as including "anxiety, irritability, intrusive memories and nightmares of Afghanistan, hypervigilance, exaggerated startle response, and isolation."  ECF No. 19 at 10.  But none of the testimony Plaintiff cites compels the conclusion that she would present with marked limitations in understanding, remembering or carrying out instructions, and the portions of the record the ALJ identified contradict such a finding.  *See* AR 28-30.  The same can be said for Mr. Abrams' finding of "extreme" social dysfunction, which is the highest degree of mental limitation available on the five-point scale.  20 C.F.R. §§ 404.1520a(c)(4).

Plaintiff cites the VA exam performed by Dr. White who "was of the opinion that Olayo's anxiety would interfere significantly with her ability to maintain consistent work attendance and performance."  ECF No 19 at 10.  However, in the same examination Dr. White observed that Plaintiff "had unremarkable appearance, appropriate posture and eye contact, was well-oriented, had poor insight and a 'scattered quality' that was 'not described in previous examinations,' moderately anxious mood, largely normal speech, logical and goal directed thought processes, and grossly intact cognition."  ECF No. 22 at 21.  To the extent Plaintiff argues Dr. White's evaluation is incompatible with the ALJ's assessment that Plaintiff has less than marked limitations in the area of cognition and less than extreme limitations in the area of social function, Plaintiff "is simply presenting a different interpretation of evidence."  ECF No. 21 at 34.

There is ample evidence in the record to support the ALJ's persuasiveness finding as to Mr. Abrams, including from Dr. White's evaluation the totality of which does not support either a marked

limitation in cognitive function or an extreme limitation in social function.  In addition to the reasons the ALJ gave in his RFC discussion for discounting Mr. Abrams' opinion, there is the fact that "trends in the claimant's mental status examinations revealed the same to be positive largely only for abnormalities of mood and/or affect; or else the claimant's mental abilities were assessed as entirely within normal limits." AR 29.  Plaintiff's representations as to the state of her mental health in the form of her three most recent PHQs all scored below the threshold for a major depressive disorder. *Id.*  The ALJ's finding that Mr. Abrams' opinion was unpersuasive was therefore a "rational" interpretation of the evidence that "must be upheld" on a substantial evidence review. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Biestek*, 139 S.Ct. at 1154.

> b.   *The ALJ's 5% off-task limitation was supported by substantial evidence.*

Plaintiff's argument that "[t]he ALJ did not explain how he arrived at the '5% off-task' figure" is inaccurate.  ECF No. 19 at 10.  The ALJ explained in his discussion of Plaintiff's gastrointestinal issues that "the residual functional capacity assessment below nevertheless reflects all associated dysfunction, by limiting the claimant to work allowing her to be off-task for 5% of each workday (i.e. sufficient time to, among other things, use the bathroom to accommodate GI needs).  AR 23.  The RFC contains the language, "she will be off-task for 5% of the workday due to, for example, the need to alternate positions or use the bathroom and/or attention/concentration lapses." AR 26.  Further, the ALJ's mental impairments discussion states, "[t]o further reflect the moderate limitation of adaptive function discussed … above, I also find that the claimant's mental impairments contribute to her need to be off-task for 5% of the workday." AR 30.

A review of District Court and Ninth Circuit case law tends to establish that there is no particular bar an ALJ must meet for incorporating a claimant's mental impairments in the RFC calculation, provided the calculation is supported by substantial evidence.  In *Bray v. Comm'r of Soc. Sec. Admin.*, for example, the Court rejected Plaintiff's argument that a severe mental impairment must be reflected in the RFC in the first place, the implication being that a claimant may suffer from even a severe mental impairment and nevertheless retain the capacity to perform "basic work activities." *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009).  Moreover, several courts have held that where an ALJ considers evidence of mental impairment but

does not include a corresponding limitation in the RFC, there was no error.  *See, e.g.*, *Sanguras v. Saul*, Case No. 1:19-CV-1036 JLT, 2021 WL 973940, at *5 (E.D. Cal. Mar. 16, 2021) ("The omission of mental limitations from the RFC … reflects the conclusion that the impairments would not interfere with the ability to perform basic work activities"); *George A. v. Berryhill*, Case No. 5:18-CV-00405-AFM, 2019 WL 1875523, at **4-5 (C.D. Cal. Apr. 24, 2019).

The Eastern District of California further addressed the scenario where an ALJ discusses mental impairments thoroughly at step two but then fails to include the same level of detail in the RFC: "The ALJ did not err in addressing Plaintiff's mental impairments in great detail at step two and briefly at step four.  Although an ALJ must discuss and evaluate evidence leading to his conclusion, he is not required to do so under any particular heading in his written decision." *Denney v. Saul*, Case No. 1:18-CV-00689-GSA, 2019 WL 4076717, at **7–8 (E.D. Cal. Aug. 29, 2019). Where, as here, the ALJ thoroughly discussed Plaintiff's mental impairments both at step two and in his RFC analysis, and specifically referenced mental impairments in the RFC itself, there is no requirement that the ALJ break down each component of the RFC, the articulation of which is ultimately the ALJ's responsibility.  *Rounds*, 807 F.3d at 1006.  This is especially the case considering the ALJ's "express incorporation of the step two findings within the RFC."  AR 25. *Frary v. Comm'r of Soc. Sec.*, Case No. 1:20-CV-00260-SAB, 2021 WL 5401495, at *19 (E.D. Cal. Nov. 18, 2021).  The ALJ provided approximately five pages of discussion summarizing and assessing Plaintiff's mental impairments, AR 25, 27-30, and at various points throughout the discussion, explicitly noted which of those findings resulted in an RFC limitation.  AR 25, 29-30. The record contains more than enough evidence to support the ALJ's RFC.  Regardless of whether there are other legitimate interpretations of the record, or whether the Court agrees with the ALJ's 5% off-task limitation, the ALJ's decision must be upheld on a substantial evidence review.

**E.**   **Whether the ALJ Provided Specific, Clear, and Convincing Reasons for Discounting Plaintiff's Pain and Symptom Testimony**.

An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the

1  pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal

2  quotation marks omitted).  "The claimant is not required to show that her impairment 'could

3  reasonably be expected to cause the severity of the symptom she has alleged; she need only show

4  that it could reasonably have caused some degree of the symptom.'" *Vasquez v. Astrue*, 572 F.3d

5  586, 591 (9th Cir. 2009) (citations omitted).

6      Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the

7  ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ] gives

8  'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163

9  (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather,

10  the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's]

11  complaints." *Id.*  Further, "[w]hile an ALJ may find testimony not credible in part or in whole, he

12  or she may not disregard it solely because it is not substantiated affirmatively by objective medical

13  evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

14      The Ninth Circuit recognized the clear and convincing evidence standard to be "the most

15  demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison v.*

16  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).  An ALJ's failure to provide "specific, clear and

17  convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error

18  that is not harmless because it precludes a court from conducting a meaningful review of the ALJ's

19  reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily.  *Brown-Hunter v.*

20  *Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

21      In making an adverse credibility determination, the ALJ may consider, among other factors,

22  (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or

23  between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's

24  work record; and (5) testimony from physicians or third parties concerning the nature, severity, and

25  effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

26      **1.**    **The ALJ's decision**.

27      The ALJ first summarized Plaintiff's symptom testimony as articulated in her function

28  report:

> [T]he claimant alleged that she could not work due to chronic lumbosacral muscle spasms, and ongoing mental illness, presenting with continue[d] depression, chronic sleep impairment, poor memory, and neglect of hygiene.  She stated that her ability to do personal care chores was greatly reduced by her back pain, such that household chores might take a whole day.  On the same report, she indicated that her ability to perform nearly all basic physical and mental work activities had been reduced by her impairments.

AR 26.  Next, the ALJ summarized the hearing testimony:

> [Plaintiff] cited her PTSD and low back pain as conditions causing particular dysfunction.  She said she had nightmares three times a week that resulted in four-hour sleep nights and chronic tiredness.  She added that she was emotionally unstable and alternatingly would sleep more than twelve hours at a time when depressed.  She said participating in social activities was difficult.  She stated she often lacked the motivation to perform personal hygiene, such as shower.

*Id.*

The ALJ ultimately found that, "the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not generally consistent with the medical evidence and other evidence in the record."  AR 27.

**2.      The parties' arguments**.

Plaintiff argues that the ALJ's stated reasons for discounting Plaintiff's symptom testimony do not meet the specific, clear and convincing standard.  ECF No. 19 at 13.  Plaintiff writes that "[a] discussion of the medical evidence and medical opinions without providing a nexus as to how that information casts doubt on Olayo's statements fails as a matter of law."  *Id.*  Plaintiff argues that the ALJ's only reasoning for discounting Plaintiff's pain testimony was that it was inconsistent with the record, and that this statement was not a "specific, clear and convincing reason."

Defendant argues that the ALJ did not in fact discount Plaintiff's subjective symptom and pain testimony, but rather "accepted that Plaintiff's impairments caused significant limitations and consequently assessed an RFC for less than the full range of light work" despite finding Plaintiff's testimony "not entirely consistent" with the record as a whole.  ECF No. 22 at 27.  For example, Defendant argues the ALJ included back and spine related limitations in the RFC specifically because of Plaintiff's "historical complaints of low back pain."  *Id.*  The ALJ also limited Plaintiff's

RFC to "understanding, remembering, and carrying out 'only simple instructions'" in light of Plaintiff's "current allegations and historical complaints of poor memory." *Id.*

Defendant also challenges Plaintiff's contention that the ALJ's sole basis for minimizing Plaintiff's symptom testimony was that it was inconsistent with the rest of the record. *Id.* Defendant lists the reasons the ALJ gave for partially discounting Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms:

> (1) objective medical findings did not support the extent of her allegations; (2) the testing performed by her providers indicated that her symptoms were not as functionally disruptive as she alleges; (3) she made inconsistent statements concerning her allegedly disabling impairments; (4) the medical record showed that her physical condition improved, such that she could perform certain daily activities with less pain; and (5) the conservative nature of her treatment for back pain contradicted her allegations of disabling limitations.

*Id.* at 27-28. Defendant accuses Plaintiff of ignoring all but the first reason in her Motion, and of mischaracterizing it as the "sole reason" the ALJ gave for his pain and symptom testimony finding. *Id.*

Plaintiff addresses argument 4 above regarding Plaintiff's testimony that her condition improved with treatment. She states: "Such statements must be interpreted with an awareness that improved functioning while being treated does not always mean that a claimant can function effectively in a workplace." ECF No. 24 at 12. As to argument 5, conservative treatment, Plaintiff claims that the ALJ was not allowed to find that such treatment undercuts Plaintiff's testimony because he did not "identify more aggressive treatment options that would be commensurate with Olayo's symptom testimony. *Cortes v. Colvin*, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016)." ECF No. 24 at 12. Plaintiff finishes her Reply reiterating that "the incantation of a lack of objective evidence is … always legally insufficient when it is the sole remaining reason. *Bunnell*, 947 F.2d at 343." *Id.* at 13.

**3.      The ALJ properly considered Plaintiff's subjective complaints**.

To the extent that the limitations in the RFC are inconsistent with Plaintiff's pain and symptom testimony, the ALJ gave specific, clear and convincing reasons for the difference. The ALJ reviewed Plaintiff's testimony about her back pain on the record and in fact relied on it to conclude that "[Plaintiff's] back problems have caused her some significant work-related

dysfunction during the period at issue." AR 28. The ALJ specified that the RFC, which limits Plaintiff to performing "light work" and accommodates "the need to alternate positions," included these back and spine limitations in light of Plaintiff's "historical complaints of lower back pain." AR 25, 28. The administrative record shows that the ALJ carefully considered and incorporated Plaintiff's testimony in the RFC; he merely doubted the degree to which Plaintiff's symptoms actually prevented her from performing all work functions in light of the record as a whole. AR 27.

Where the ALJ discounted Plaintiff's subjective testimony, he provided specific, clear and convincing reasons for doing so. The ALJ explained that Plaintiff's back pain testimony was "not entirely consistent" with objective medical evidence and other evidence in the record. *Id.* He noted the absence of x-ray imaging of Plaintiff's spine during the relevant period, inferring "that the claimant's back/spine-related symptoms were not so functionally disruptive that great understanding of the problem was necessary." *Id.* The ALJ's discussion emphasizes that what little x-ray imagining Plaintiff's providers took revealed "only minimal levoscoliosis." *Id.* Multiple examinations found Plaintiff to have normal musculoskeletal range of motion, normal ambulation, and no abnormalities in the extremities. AR 27. The ALJ's cites meaningfully contradict Plaintiff's testimony on her function report, for example, that "her ability to perform nearly all basic physical and mental work activities had been reduced by her impairments." AR 26.

The ALJ further explained how Plaintiff's own representations undermine her testimony: "a prehearing memorandum supplied by the claimant's representative argued for disability based solely on mental limitations … allowing still further inference that this impairment has not substantially limited the claimant's function during the period at issue." AR 27. Plaintiff's argument that the ALJ failed to provide a "nexus" as to how objective findings in the record contradicted her testimony fails as a factual matter; not only did the ALJ outline the inferences he was making from the evidence, but, as Defendant argues, "these records *on their face* contradict her allegations." ECF No. 22 at 29.

The ALJ's observations about the nature of Plaintiff's treatment, both conservative and at least moderately effective, constitute specific, clear and convincing reasons for partially discounting Plaintiff's pain and symptom testimony. AR 27. The ALJ noted that, through physical therapy,

Plaintiff's condition improved.  *Id.*, *citing* AR 1170-74 ("patient reports she is progressi[ng] well, significant reduction in low back pain with daily activities").  Having failed to address this argument in her Motion, Plaintiff counters in her Reply that improvement with treatment "does not always mean that a claimant can function effectively in a workplace."  ECF No. 24.  This statement fundamentally fails to engage with the substance of the ALJ's analysis, which contains reason upon reason for concluding that Plaintiff's allegations of total disability are problematic.  AR 26-29.

"Balancing all of the evidence, the ALJ accepted that … [Plaintiff's] impairments caused significant limitations and incorporated numerous findings in the RFC (AR 25), but found that her reported improvement did not align with her allegations of totally disabling symptoms, and instead showed that she had the functional ability to perform the tasks as limited in the RFC."  ECF No. 22 at 32.  Similarly, the ALJ's reference to the conservative nature of Plaintiff's treatment is one reason among several for concluding Plaintiff's testimony was not wholly credible, an inference Plaintiff admits the ALJ was permitted to make.  ECF No. 24 at 12.  The rule Plaintiff cites requiring the ALJ to "identify more aggressive treatment options that would be commensurate with Olayo's symptom testimony," is not binding precedent and the Court declines to find error here.  The ALJ's RFC was supported by substantial evidence.  As such, the Court upholds the Commissioner's decision and denies Plaintiff's Motion for Reversal and Remand.  ECF No. 19.

## IV.   ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 19) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 22) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court shall close this case and enter judgment accordingly.

DATED this 21st of December, 2021.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE